IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

TIMOTHY DAGOSTINE, et al.,

        Plaintiffs,

v.                                                   CIVIL ACTION NO. 2:22-cv-00220

MARK PENDLETON, et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are Defendants Steven Robey and Mark Pendleton's Motion to Dismiss Plaintiffs' Amended Complaint (ECF No. 19), and Defendant Baker Tilly US, LLP's Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 21). Also pending is Plaintiffs' Motion for Leave to File Second Amended Complaint (ECF No. 25). This Court is unable to rule on the respective motions, however, because it lacks subject-matter jurisdiction to hear the case. For the reasons more fully explained below, this case is **DISMISSED**.

                                                  I.    BACKGROUND

This matter arises out of Timothy and Ramona Dagostine's (collectively "Plaintiffs") failure to pay their taxes. In November, 2015, the Plaintiffs and Internal Revenue Service ("IRS") entered into a taxpayer repayment agreement ("the Agreement") to repay back taxes. (ECF No. 6 at 1–2, ¶ 2.) The Agreement required the Plaintiffs to, among other things, provide the IRS with

updated financial information upon request. (*Id.* at 7–8, ¶ 20.) The IRS reserved the right to cancel the Agreement if it determined the Plaintiffs' ability to pay was in jeopardy. (ECF No. 20 at 1.)

Plaintiffs hired Defendant Arnett Carbis Toothman, LLP ("ACT"), a certified public accountant ("CPA") firm, to help them maintain the Agreement. (ECF No. 6 at 7, ¶ 18.) Plaintiffs allege they "contract[ed], in exchange for a fee," with Defendant ACT, and two CPAs, Defendant Mark Pendleton and his supervisor, Defendant Steven Robey, provided the needed services. (*Id.* at 7, ¶¶ 18–19.) Specifically, Plaintiffs allege these Defendants contractually agreed to "timely provide[] . . . the IRS" with updated financial information when the IRS so requested. (*Id.* at 7–8, ¶ 20.)

In November, 2017, the IRS requested updated financial information from the Plaintiffs. (*Id.* at 8, ¶ 23.) For one reason or another, the IRS never received the requested information. Plaintiffs allege they supplied the information to Defendant Pendleton, who then assured them he submitted it to the IRS. (*Id.* at 8, ¶ 23.) But, in April, 2018, the IRS notified the Plaintiffs that the IRS never received their updated financial information (*Id.* at 9, ¶ 26.)  The IRS then terminated the Agreement. (*Id.*)

On May 9, 2022, Plaintiffs filed suit in this Court against Defendants Pendleton and Baker Tilley US, LLP, who they claim is a successor in interest to Defendant ACT. (ECF No. 1.) Plaintiffs' sole theory of liability is breach of contract. (*Id.*) Then, on June 28, 2022, Plaintiffs amended their complaint to include Defendants ACT and Robey. (ECF No. 6). The Amended Complaint is therefore the operative pleading.[1]

---

[1] On September 13, 2022, Plaintiffs filed a Motion for Leave to File Second Amended Complaint, hoping to clarify Defendant Robey's supervision of Defendant Pendleton, and join Washington Street Legacy LLP ("WSL"), who they claim is a successor-in-interest to Defendant ACT. (ECF No. 25.) The Court has not—and cannot—rule on this motion. Nevertheless, Plaintiffs, seemingly impatient with the judicial process, filed a separate suit against WSL on November

Plaintiffs allege this Court has jurisdiction pursuant to 28 U.S.C. § 1331 because their state-law claim for breach of contract presents "significant federal issues" that "predominate[] over state law." (ECF No. 6 at 1–2, ¶ 2.) For the reasons explained below, this is incorrect. The Plaintiffs have failed to prove this Court has subject-matter jurisdiction, and the case must be dismissed.

## II.   DISCUSSION

### A.   Applicable Law

Federal courts—including this Court—are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). That is, "[t]hey possess only that power authorized by Constitution and statute." *Id.* Federal courts therefore presume "that a case lies *outside* its limited jurisdiction unless and until jurisdiction has been shown to be proper." *United States v. Poole*, 531 F.3d 263, 274 (4th Cir. 2008) (emphasis in original); *see also Turner v. Bank of N. Am.*, 4 U.S. (4 Dall.) 8, 10 (1799). Jurisdiction is vested in the courts by Congress, *Kontrick v. Ryan*, 540 U.S. 443, 452 (2004), and it cannot "be expanded by judicial decree." *Kokkonen*, 511 U.S. at 377 (citing *Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6 (1951)).

Courts must have two separate and distinct kinds of jurisdiction in each case. *Lightfoot v. Cendant Mortg. Corp.*, 580 U.S. 82, 95 (2017). The first, personal jurisdiction, limits the courts' power over the parties. *See Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021). The second, subject-matter jurisdiction, "defines . . . court[s'] authority to hear a given type of case." *United States v. Morton*, 467 U.S. 822, 828 (1984). Put differently, subject matter jurisdiction is "a restriction on federal power," *Constantine v. Rectors & Visitors of George Mason*

---

4, 2022. *See* Complaint, *Dagostine v. Wash. St. Legacy LLP*, No. 2:22-cv-505 (S.D. W. Va. Nov. 4, 2022). This Complaint parrots the allegations of the Amended Complaint; the only material difference is the inclusion of WSL and corresponding request that this Court "resolve the successor [liability] issues in this [case]." (ECF No. 1 at 5.) These two cases were thereafter consolidated on November 14, 2022. (ECF No. 45).

*Univ.*, 411 F.3d 474, 480 (4th Cir. 2005), that "serve[s] institutional interests" *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999), by limiting the types of cases federal courts may hear. Importantly, the party asserting jurisdiction carries "[t]he burden of proving subject matter jurisdiction." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). If the proponent of jurisdiction fails to carry their burden, causing a want of subject-matter jurisdiction, the case must be dismissed. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

Because subject matter jurisdiction is a "bedrock" requirement, *Marathon Oil Co.*, 526 U.S. at 583, of this Court's "power to hear . . . case[s]," *Arbaugh*, 546 U.S. at 514, it has several unique characteristics. First, it is not waivable. *United States v. Cotton*, 535 U.S. 625, 630 (2002). Second, "objection that a federal court lacks subject-matter jurisdiction . . . may be raised . . . at any stage in the litigation." *Arbaugh*, 546 U.S. at 506 (internal citations omitted). Third, courts must raise the jurisdictional issue *sua sponte* because they "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Id.* at 514; *see also Marathon Oil Co.*, 526 U.S. at 583 ("[S]ubject-matter delineations must be policed by the courts on their own initiative even at the highest level.").

Plaintiffs seeking access to the federal courts have two ways of proving subject-matter jurisdiction. The first is through diversity jurisdiction. *See* 28 U.S.C. § 1332. Diversity jurisdiction exists when: (1) the case is "between . . . citizens of different States" *and* (2) the amount "in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." § 1332(a). Importantly, § 1332's residency requirement demands complete diversity of the parties, meaning "*each* defendant is a citizen of a different State from *each* plaintiff." *Owen Equip. & Erection Co.*

*v. Kroger*, 437 U.S. 365 (1978) (emphasis in original). Otherwise, there is no diversity jurisdiction. *See id.*

The second means of accessing federal courts is through federal question jurisdiction. *See* 28 U.S.C. § 1331. Federal question jurisdiction confers subject-matter jurisdiction on courts when any claim "aris[es] under the Constitution, laws, or treaties of the United States." *Id.* There are two ways a case may "aris[e] under" federal law. *W. Va. State Univ. Bd. Of Governors v. Dow Chem. Co.*, 23 F.4th 288, 307 (4th Cir. 2022). Typically, this is done by asserting a federal cause of action. *Id.* (citing *Am. Wells Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916) ("A suit arises under the law that creates the cause of action.")). Alternatively, litigants may, in a "special and small category" of cases, *Empire Healthchoice Assurance, Inc., v. McVeigh*, 547 U.S. 677, 699 (2006), trigger federal question jurisdiction by showing that their state-law claim "necessarily depends on resolution of a substantial questions of federal law." *Mayor & City Council of Balt. v. BP P.L.C.*, 31 F.4th 178, 208 (4th Cir. 2022) (quoting *Burrell v. Bayer Corp.*, 918 F.3d 372, 380 (4th Cir. 2019)).

This latter category of arising-under cases, known as the "substantial federal question" doctrine, *Old Dominion Elec. Coop. v. PJM Interconnection, LLC*, 24 F.4th 271, 280 (4th Cir. 2022), has at times been called an "unruly doctrine" because it "outlin[es] the contours" of federal question jurisdiction.[2] *Gunn v. Minton*, 568 U.S. 251, 258 (2013); *see also Textile Workers Union of Am. v. Lincoln Mills of Ala.*, 353 U.S. 448, 470 (1957) (Frankfurter, J., dissenting)) (referring to the substantial federal question doctrine as a "litigation provoking problem"). Fortunately, the Supreme Court has shed light on the matter, better illuminating § 1331's boundaries, by

---

[2] Chief Justice Roberts once observed that "[i]n outlining the contours of this slim category, we do not paint on a blank canvas. Unfortunately, the canvas looks like one that Jackson Pollock got to first." *Gunn*, 368 U.S. at 258.

"establish[ing] a four-prong test for determining the existence of federal-question jurisdiction." *BP P.L.C.*, 31 F.4th at 209 (citing *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005)). Litigants wishing to invoke federal question jurisdiction for their state-law claims must show that "a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. Federal question jurisdiction exists "only if a case meets all four requirements." *Pressl v. Appalachian Power Co.*, 842 F.3d 299, 303 (4th Cir. 2016) (citing *Gunn*, 568 U.S. at 258).

    B. *Analysis*

With these principles in mind, the Court now looks to whether the Plaintiffs have established this Court's subject-matter jurisdiction. Plaintiffs allege this Court has federal question jurisdiction under § 1331 because their "state law claims implicate significant federal issues in that [their] state law claims turn on substantial questions of federal law."[3] (ECF No. 6 at 1–2, ¶ 2.) Plaintiffs then cite numerus provisions of federal tax law and regulations,[4] claiming their state law claims "turn on the application and interpretation" of these federal laws "that must be resolved first" because they concern "the validity, construction, or application" of federal law. (*Id.* at 2, ¶ 3.) Because their state law claims "are completely enveloped by federal [law]," Plaintiffs allege there are "serious federal interests" at stake, which justify "the need for adjudication in a federal

---

[3] Plaintiffs also cite 28 U.S.C. § 1441(a), but that statute is inapplicable. Section 1441 allows *defendants* to remove any state court action "to the district court of the United States for the district and division" where the state action is pending. *Id.* § 1441(a). Plaintiffs are mistaken for two reasons in believing they may use § 1441 to trigger subject-matter jurisdiction. First, § 1441, by its plain terms, may only be used by defendants, not plaintiffs. *Id.* (allowing for removal by defendants only). Second, Plaintiffs originally filed their case in this Court; it was never removed from state court. (ECF No. 1.) As such, the removal statute is inapplicable and does not confer subject-matter jurisdiction upon this Court.
[4] These include 26 I.R.C. §§ 6159, 6331(d), 6651, 7122(e), 7123, 7502(a) as well as 26 C.F.R. §§ 301.6159-1, 301.7502-1. (ECF No. 6, at 6–7, ¶ 17.)

forum." (*Id.* at 2–3, ¶ 4.) Plaintiffs are incorrect. A careful analysis of their Amended Complaint and *Gunn*'s four-part test reveals their claim lies beyond § 1331's outer boundaries.[5] The Court addresses each element in turn.

    i.    Necessarily Raised

For starters, Plaintiffs have failed to "necessarily raise" a federal issue. The Court notes at the outset that while a federal issue is "necessarily raised" when "the vindication of a right under state law necessarily turn[s] on some construction of federal law," *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 9 (1983), the Supreme Court has instructed "this statement must be read with caution." *Merrell Dow Pharm v. Thompson*, 478 U.S. 804, 808–09 (1986). The "mere need to apply federal law in a state-law claim" is insufficient to create arising-under jurisdiction. *Grable*, 545 U.S. at 313. Instead, the federal issue must be a "necessary element[] of [the] state law claim[]," meaning the state-law claim will "rise or fall on the resolution of a question of federal law." *Old Dominion*, 24 F.4th at 280 (citing *Pinney v. Nokia, Inc.*, 402 F.3d 430, 449 (4th Cir. 2005)). In essence, the federal issue must be outcome determinative of the state-law claim. *Compare BP P.L.C.*, 31 F.4th at 210 (explaining that *Grable*'s first prong requires state-law claims to "hinge on the determination of a federal issue."), *with Pinney*, 402 F.3d at 446 (noting that a "lurking question of federal law" does not trigger arising-under jurisdiction); *see also Burrell*, 918 F.3d at 381 (holding that state-law claims "replete with federal law references" do not, without more, present a federal question) (internal quotation marks omitted).

---

[5] Plaintiffs also do not have diversity jurisdiction under § 1332. The Amended Complaint in Civil Action No. 2:22-cv-220 states that Plaintiffs, Defendant Pendleton, and Defendant Robey are each West Virginia residents. (ECF No. 6 at 3–4, ¶¶ 8, 10–11.) The Complaint in Civil Action No. 2:22-cv-505, meanwhile, fails to allege that WSL, a limited liability partnership, consists of partners completely diverse of the Plaintiffs. *Roche Cyrulnik Freedman LLP v. Cyrulnik*, 582 F. Supp. 3d 180, 187 (S.D.N.Y. 2022) ("For an LLP, citizenship depends on the citizenship of its partners: an LLP is treated as a citizen of every state of which its partners are citizens."); (ECF No. 1 at 4, ¶ 10.)

7

Here, the Plaintiffs have not identified, much less raised, a single federal issue. Their state-law claim sounds in breach of contract: they allege Defendants Pendleton and Robey breached their agreement with Plaintiffs, and this alleged breach proximately caused them damages.[6] (ECF No. 6 at 9–10, ¶¶ 26–31.) This claim therefore turns on West Virginia, not federal, law. *Sneberger v. Morrison*, 776 S.E.2d 156, 171 (W. Va. 2015) ("A claim for breach of contract requires proof of the formation of a contract, a breach of the terms of that contract, and resulting damages."); *see also Pinney*, 402 F.3d at 446 (finding federal question jurisdiction lacking when "state law establishes [the] elements, without reference to federal law."). Plaintiffs' failure to identify any federal law upon which their case hinges forecloses any argument that their case arises under federal law. *Vlaming v. W. Point Sch. Bd.*, 10 F.4th 300, 306 (4th Cir. 2021) ("To necessarily raise a federal issue, a state law claim must hinge on the determination of a federal issue.").

Plaintiffs try to avoid this obvious result by including a laundry list of federal tax laws and regulations in their Amended Complaint, arguing their case somehow "raises issues of federal income tax law." (ECF No. 6 at 6–7, ¶ 17.) Yet they make no mention of the particular federal issue raised. Instead, they suggest that because federal tax law is "so inexorably intertwined" with their claims, a federal forum is needed to adjudicate their case. (*Id.* at 7, ¶ 17.) This stands in stark contrast to *Grable*. There, the IRS seized and sold the plaintiff's property to satisfy a tax debt. *Grable*, 545 U.S. at 310. Sometime later, the plaintiff filed a state-law quiet title action against the eventual third-party buyer. *Id.* at 311. Plaintiff premised its claim on the IRS's failure to comply with the federal notice requirement, thus raising an issue of statutory interpretation. *Id.* The

---

[6] Defendants Pendleton and Robey dispute that Plaintiffs have alleged a breach of contract, arguing instead the claim sounds in tort. (ECF No. 20 at 4–7.) Because the Court lacks subject-matter jurisdiction and cannot resolve this dispute, the Court assumes without deciding that Plaintiffs have brought a contract claim.

8

Supreme Court noted that, because "the meaning of the federal statute" was "an essential element of [the] quiet title claim," a federal issue had been necessarily raised. *Id.* at 315. Plaintiffs' claim is a far cry from this. They merely present a vague, lurking federal question in the background of their state-law claim without explaining how the claim hinges upon its resolution.

Plaintiffs make a last-ditch effort to present a substantial federal question by alleging Defendants' "potential defenses . . . will look exclusively to federal [law]." (ECF No. 6 at 3, ¶ 5.) This ignores the well-pleaded complaint rule. "Jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Pressl*, 842 F.3d at 302 (internal quotation marks omitted). "A defense that raises a federal question is inadequate to confer federal jurisdiction." *Merrell Dow*, 478 U.S. at 808 (citing *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149 (1908)). This Court cannot evaluate whether any potential defenses present a federal question because its inquiry is confined to the Plaintiffs' Amended Complaint. *Burrell*, 918 F.3d at 381 ("Under the well-pleaded complaint rule . . . [the Court's] § 1331 inquiry is limited to the plaintiff's statement of his own claim; [the Court does] not consider affirmative defenses that might be anticipated in the complaint."). Because Plaintiffs' Amended Complaint fails to raise a substantial federal question, it fails the first *Gunn* element.

    ii.    Actually Disputed

Nor is a federal issue actually disputed. "A federal issue is 'actually disputed' when the parties disagree about the effect of federal law." *BP P.L.C.*, 31 F.4th at 209 (citing *Gunn*, 568 U.S. at 259). Such a dispute "really and substantially involves a dispute or controversy respecting the validity, construction, or effect of [federal] law." *Vlaming v. W. Point Sch. Bd.*, 480 F. Supp. 3d 711, 718 (E.D. Va. 2020) (alteration in original) (quoting *Shulthis v. McDougal*, 225 U.S. 561, 569

(1912)) *aff'd*, 10 F.4th 300 (4th Cir. 2021). Importantly, a federal issue must exist before it can be actually disputed. *See Va. Horsemen's Benevolent & Protective Ass'n, v. Colonial Downs, L.P.*, No. 3:17-cv-133-MHL, 2017 WL 3976291, at *4 n.8 (E.D. Va. Sept. 8, 2017) (noting that "if a federal issue does exist, it is 'actually disputed.'").

A review of the docket shows that no federal issue is actually disputed. To be sure, the parties dispute nearly everything—from the nature of the action itself (whether it be contract or tort) and applicable statute of limitations to successor liability and the availability of insurance coverage. (*See e.g.*, ECF No. 20, 22) But none of those disputes concern federal law. The Court is not surprised that a federal issue is lacking, however. Before an issue is actually disputed, it must first be raised. Plaintiffs' failure to satisfy *Gunn*'s first prong is fatal to their ability to satisfy its second prong.

   iii. Substantial

The Court is also unconvinced that Plaintiffs have plead a "substantial" federal issue. "[T]here is a high bar for treating a federal issue as sufficiently 'substantial'" to warrant a federal forum. *Burrell*, 918 F.3d at 385; *See also Grable*, 545 U.S. at 313 ("[F]ederal [question] jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum."). The inquiry is not whether "the federal issue [is] significant to the particular parties in the immediate suit." *Gunn*, 568 U.S. at 260. Rather, "[t]he substantiality inquiry . . . looks . . . to the importance of the issue to the federal system as a whole." *Id.* This "narrow class of state-law actions that [trigger] federal question jurisdiction" generally "involve[s] a pure issue of law, rather than being fact-

10

bound and situation-specific." *Burrell*, 918 F.3d at 384–85 (internal quotation marks omitted) (quoting *Empire Heatlthcare*, 547 U.S. 700–01).

In determining where this case lies on the spectrum of "substantial," the Court is guided by precedent. *Grable*, as discussed above, is a prime example of a substantial federal question. The issue was clearly presented and purely legal in nature. *See Grable*, 545 U.S. at 315. The meaning of the federal tax statute was important to the federal system as a whole because: (1) the Government has a strong interest in the prompt collection of delinquent taxes; (2) the IRS's ability to satisfy tax debts by selling delinquents' real property requires clear and certain terms of notice so third-party buyers can assure themselves of good title; (3) litigants may find it valuable to appear before judges acquainted with federal tax matters. *Id.*

*Gunn*, on the other hand, exemplifies an insubstantial federal issue. In *Gunn*, a would-be patent holder's patent was invalidated during litigation, so he sued his attorneys for malpractice. *Gunn*, 568 U.S. at 254–55. The plaintiff alleged his attorneys' failure to timely raise a particular patent specific argument in the prior litigation cost him the patent. *Id.* at 255. The Supreme Court found this federal issue—whether a specific patent related argument could have saved an already invalidated patent—insubstantial because it mattered to nobody but the parties. *See id.* at 261. Specifically, the "backward-looking nature of [the] legal malpractice claim" was merely a hypothetical—if the argument had been timely made, would the result have been different? *Id.* Regardless of the hypothetical's answer, the "real-world result" would not change. *Id.* The Supreme Court ultimately found this fact-based, situation-specific issue insufficient to trigger arising-under jurisdiction because it lacked importance to the broader, federal system as a whole. *Id.* at 263–64.

This case hews closer to *Gunn* than *Grable*. First, to the extent a federal question has been raised, it is fact-intensive rather than purely legal. Plaintiffs have not challenged the constitutionality or meaning of any federal statute; they simply allege the Defendants failed to submit their updated financial information as contemplated in the Agreement. Their claim requires application of law to the facts, not interpretation of law itself. Second, the case is backward-looking, similar to *Gunn*. This Court's reading or interpretation of federal tax law, should it occur, will change nothing—the damage is done, and the IRS has terminated Plaintiffs' tax repayment agreement. Adjudicating Plaintiffs' claim for damages against Defendants will have no broader effect on "the federal system as a whole." *Gunn*, 568 U.S. at 260.

The Court recognizes a common theme between this case and *Grable*: delinquent federal taxes. Unfortunately for the Plaintiffs, the similarities end there. *Grable* focused on the correct meaning of a federal notice statute that enabled the IRS to seize and sell delinquents' real property, thereby satisfying the debt. *Grable*, 545 U.S. at 314–15. Grable's quiet-title suit was therefore *prospective* in nature because it determined (1) the correct meaning of federal law, which (2) determined who had superior title to real property sold by the IRS. *Id.* Plaintiffs' claim, as noted above, looks only to past conduct to compensate for past wrongs.

Finally, the Court is hesitant to find the lone similarity between Plaintiffs' claim and *Grable* controlling. Although the *Grable* Court found the state-law claim arose under federal law, it was cognizant that the issue appeared in a quiet-title action. The *Grable* Court understood the importance of the notice requirement to the federal system because the IRS's ability to satisfy delinquent tax debts by selling real property required "clear terms of notice" so buyers could rest assured the IRS had "touched the bases necessary for good title." *Id.* at 315. The *Grable* Court

12

tailored its reasoning—and its holding—to this fact, at one point observing its conclusion "put[] [the *Grable* Court] in venerable company [because] quiet title actions hav[e] long been the subject of some of the earliest exercises of federal-question jurisdiction over state-law claims." *Id.* Thus, *Grable*'s finding of federal question jurisdiction relied heavily on the quiet-title nature of the suit, and the tax issue was anything but the "door key" to federal court. *Id.* at 318. Plaintiffs therefore fail *Gunn*'s third element as well.

      iv.      Disruption of Congressionally Approved Federal-State Balance

Exercising jurisdiction over the Plaintiffs' claim would also be inconsistent with the congressionally approved division of labor between state and federal courts. Federal courts may only hear state-law claims arising under federal law when they are "capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. This determination "require[s] sensitive judgments about congressional intent, judicial power, and the federal system." *Merrell Dow*, 478 U.S. at 810.

*Burrell v. Bayer Corp.*, 918 F.3d 372 (4th Cir. 2019), informs the analysis that courts should use when making these judgments. There, the Fourth Circuit refused to exercise federal question jurisdiction because the federal issue arose in a state-law products liability suit. *Id.* at 386–88. The panel held that *Gunn* demands the party asserting jurisdiction prove that federal courts could hear *not only* the particular case, *but also* the "multitude of cases just like it" without disturbing the "congressionally approved balance" of judicial responsibilities. *Id.* at 386. Because the Burrells' case was a "garden variety state tort" suit that "risk[ed] enormous disruption to the division of judicial labor" by shifting a "tremendous number of cases" from state to federal court, the panel found *Gunn*'s fourth element unsatisfied. *Id.* at 387 (quoting *Grable*, 545 U.S. at 318.).

Plaintiffs' claim is no different. This case is a run-of-the-mill contract claim that, if federal courts heard the "multitude . . . just like it," would cause "innumerable claims traditionally heard in state court" to be "funneled [into] federal court instead." *Burrell*, 918 F.3d at 380. The Plaintiffs offer no evidence or reasoning why their case is an outlier, like *Grable*'s quiet-title claim, that would cause "only a microscopic effect on the federal-state division of labor." *Grable*, 545 U.S. at 315. Rather, they focus solely on the supposed substantiality of the faint federal interest implicated. (ECF No. 6 at 2–3, ¶ 4.) This misses the mark, however, ignoring rather than aiding the "sensitive judgments" of "practicality and necessity" that precedent demands. *Merrell Dow*, 478 U.S. at 810 (quoting *Franchise Tax Bd.*, 463 U.S. at 20).

If the fourth *Gunn* factor was satisfied here, then many other cases no different than this one would appear in federal court. Anytime the account-client relationship sours, the disgruntled party could haul the other into federal court—despite only having a state-law claim—simply because the contract tangentially relates to federal law. *Grable* bears this out: there, the Supreme Court pointed out that an overly-generous reading of § 1331 would "attract[] a horde" of state-law claims, which, in turn, would lead to "a tremendous number of [state-law] cases" in federal court. *Grable*, 545 U.S. at 318. Exercising jurisdiction here would upset the apple cart of federal-state judicial responsibilities that Congress carefully crafted by enacting § 1331. *See Burrell*, 918 F.3d at 387 (finding "no indication that Congress intended to divert a multitude of fact-intensive, state-law suits" to federal court merely because of the alleged failure to comply with federal law). The Court declines Plaintiffs' invitation to do so.

In all, Plaintiffs' claim fails to fulfill any of *Gunn*'s four elements, and this Court does not have subject-matter jurisdiction over their claim.

### III.	CONCLUSION

For the foregoing reasons, the Court lacks subject-matter jurisdiction to hear this case. Accordingly, it is **ORDERED** that this civil action is **DISMISSED** and retired from the docket of this Court. The Court **DIRECTS** the Clerk to remove this matter from the Court's docket.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:	November 15, 2022

_____
THOMAS E. JOHNSTON, CHIEF JUDGE